COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

SYLVIA MARTIN

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1632-19-4                          JUDGE JAMES W. HALEY, JR.
                                                        MARCH 31, 2020

VIRGINIA BEACH PUBLIC SCHOOLS AND
 CORVEL CORPORATION

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Casey E. Duchesne (ChasenBoscolo Injury Lawyers, on brief), for
        appellant.

        Bryan S. Peeples (Robert L. Samuel; Pender & Coward, P.C., on
        brief), for appellees.

        Sylvia Martin ("claimant") appeals the decision of the Workers' Compensation Commission

("the Commission") that she failed to prove by a preponderance of the evidence that she sustained a

compensable injury by accident on March 2, 2018.  She also asserts that "the 'act of God' defense is

contrary to the humanitarian purpose of the Workers' Compensation Act" and "is not applicable to

[her] case."  For the following reasons, we affirm the Commission's decision.

                                            Background

        On appeal from a decision of the Workers' Compensation Commission, the evidence and

all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below.  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72

(2003).  Claimant worked at Kellam High School in Virginia Beach as a security officer,

patrolling the school grounds and monitoring "hallways, doorways, [and] bathrooms."  After a

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fall at work on February 16, 2018, however, she was placed on work restrictions that severely limited her duties.[1]  Not only did those restrictions prevent her from stooping, kneeling, or climbing, they also dramatically curtailed work involving walking and standing.  Following her February accident, she complained that walking was painful and that she was "[l]imping throughout the day."

Claimant remained on these work restrictions on March 2, 2018.  At approximately 11:30 a.m. that morning, she was walking to lunch on school grounds when she approached a stockade metal fence that enclosed a "breezeway" leading to another school building entrance.  Claimant, who ate lunch on the other side of the building, pushed open the gate[2] in the fence and passed through it into the breezeway.[3]  When she opened the gate, or door, "the wind blew it and then blew it back into [her]."  Her arm was caught between the gate and the fence, and she fell onto the cement.  Claimant used the gate two to four times each day and noted that the gate did not require a key to open it in the direction that she was walking; however, a key was necessary to open the gate from the opposite direction.

Claimant filed a claim for benefits on July 12, 2018.  She asserted that she had landed on her left side, injuring her left leg, left hip, ribs, back, neck, left hand, and right hand.  The parties agreed that the deputy commissioner would first determine whether claimant had suffered a compensable accident and would defer "[the] remaining issues related to ongoing treatment and which body parts [we]re compensable."

---

[1] Claimant's medical records reveal that she had suffered from lower left back pain for several years and that she had been going to physical therapy, but had stopped in June 2017.

[2] The gate was also constructed of stockade metal fencing.

[3] Claimant described the breezeway as "an area where . . . trucks and deliveries and all of that go through."  She stated that it was the area "where you take trash cans and empty trash cans."

Citing the "actual risk" test applied in O'Donoghue v. United Continental Holdings, Inc., 70 Va. App. 95 (2019), the deputy commissioner ruled that claimant had failed to prove by a preponderance of the evidence that her accident arose out of her employment because she did not establish that "th[e] gate, its location, the surrounding environment or Claimant passing through it was a specific work-related risk that 'collaborated' with the wind (an act of God) to cause her injury."[4]  Relying on O'Donoghue and Virginia Employment Commission v. Hale, 43 Va. App. 379, 385 (2004), the deputy commissioner concluded, "[w]ithout evidence of an additional work-related risk beyond that to which the general public is exposed, we are left to conclude that Claimant's fall was caused by a natural wind force, which 'standing alone, is considered "an act of God" and does not establish that [she] is entitled to coverage under the Act.'"

Claimant sought review by the Commission.  She asserted that "the design of the metal gate, built in an outdoor breezeway, inherently expose[d] it to more wind on particularly windy days."  Because the gate required a key to open in one direction, claimant also argued that "it was not the type of door used by the general public."  Finally, she maintained that the "act of God" defense did not apply because her accident resulted from "simply windy" conditions rather than "an unusual or extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected."

The Commission affirmed by a split vote.  After concluding that the "act of God" doctrine applied to accidents involving "high winds," it addressed whether claimant had "established by preponderating evidence that her use of this particular door in this particular location created a 'heightened' or 'augmented' risk of injury beyond the general risk to anyone using a door on a windy day."  It found that claimant had failed to prove that the area where she

---

[4] Although the deputy commissioner noted that claimant was carrying an item in her left hand at the time of the accident, he emphasized that "there is no evidence that this item was related to Claimant's work or contributed to the accident."

was injured was "more susceptible to[] the hazard of storms" or "continually [blowing]" winds than other areas, or that the location of the door in the breezeway "exposed it to more wind on windy days than other locations." The Commission ruled that claimant had failed to prove that "the condition of the breezeway . . . expos[ed] employees to a greater risk of injury than that posed to the general public at large." Thus, it decided that claimant had failed to prove that "'the nature and position of' the door was a risk of employment and that[,] combined with the wind gust, [it] caused the accident."

In reaching its decision, the Commission stressed that claimant testified that the gate was "heavy," but offered no additional proof "tending to show how the door's weight, structure, or location contributed to the accident." After viewing the video footage of the accident, it determined that the door was "partially covered in chain link which would provide less air resistance than a solid door." The Commission also found that the footage did not corroborate claimant's assertion that the area was "particularly windy." Therefore, it held that claimant had failed to prove that she was "exposed to an unusually high wind situation, that her employment caused her to be exposed to, or more susceptible to, injury on a windy day, or that the location of the incident exposed her to any greater risk than anyone else in that area." Accordingly, it affirmed the deputy commissioner's decision.

This appeal followed.

<u>Analysis</u>

To establish that an injury is compensable, a claimant "must prove by a preponderance of the evidence three elements: (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of employment; and (3) that the injury arose out of the employment." <u>Snyder v. City of Richmond Police Dep't</u>, 62 Va. App. 405, 412 (2013) (quoting <u>Southland Corp. v. Parson</u>, 1 Va. App. 281, 283-84 (1985)). A claimant fails to carry that burden when her

case rests "merely on conjecture or speculation." Central State Hospital v. Wiggers, 230 Va. 157, 159 (1985). Here, the issue before us is whether claimant proved that her injuries arose out of her employment.

Whether an injury arises out of employment is a mixed question of law and fact. O'Donoghue, 70 Va. App. at 103. When the Commission's factual findings underlying its decision are "based on credible evidence" and "'reasonable inferences' drawn from that evidence," its findings are "conclusive and binding." Id. (quoting Va. Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524, 532-33 (2013)). "This principle applies 'even [if] there is evidence in the record to support contrary findings.'" Yahner v. Fire-X Corp., 70 Va. App. 265, 273 (2019) (quoting Jeffreys v. Uninsured Emp'r's Fund, 297 Va. 82, 87 (2019)). We review *de novo* the Commission's application of the controlling law to the facts. See Caplan v. Bogard, 264 Va. 219, 225 (2002). While we are not bound by the Commission's construction of the Workers' Compensation Act, we do give it weight, as the Commission is the agency charged with the administration of that law. Anagua v. Sosa, 59 Va. App. 506, 514 (2012); see also Reed, 40 Va. App. at 73 ("[C]ommission's interpretation of its enabling statute . . . is entitled to be given weight by the courts." (quoting Sturtz v. Chesapeake Corp., 38 Va. App. 672, 675 (2002))).

"An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 556 (2012) (quoting United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258 (1985)). "To determine whether such a causal connection exists, Virginia applies the 'actual risk test.'" Id. (quoting Lucas v. Lucas, 212 Va. 561, 563 (1972)). "That test 'excludes an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.'" Snyder, 62 Va. App. at 412-13 (quoting Bernard v. Carlson Cos.-TGIF, 60 Va. App. 400, 405 (2012)). "The actual

risk test 'requires . . . that the employment expose the workman to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks.'" Conner v. City of Danville, 70 Va. App. 192, 201 (2019) (quoting Lucas v. Fed. Express Corp., 41 Va. App. 130, 134 (2003)). "'An actual risk of employment' is 'not merely the risk of being injured while at work.'" Snyder, 62 Va. App. at 413 (quoting Taylor v. Mobil Corp., 248 Va. 101, 107 (1994)).

> The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

Id. (quoting Simms v. Ruby Tuesday, Inc., 281 Va. 114, 123 (2011)). "Hazards to which the general public is equally exposed are non-compensable." Lucas, 41 Va. App. at 134.

Conversely, "proof of an injury while at work from . . . some . . . 'natural force,' standing alone, is considered 'an act of God' and does not establish that the employee is entitled to coverage under the [Workers' Compensation] Act." O'Donoghue, 70 Va. App. at 104 (quoting Hale, 43 Va. App. at 385). Thus, when an employee "is injured by some natural force" which "operate[s] directly upon [her] without the intervention of any other agency or instrumentality," the injury "arises not out of the employment but is due solely to an act of God." Lucas, 41 Va. App. at 134-35 (quoting Elmer H. Blair, Reference Guide to Workmen's Compensation § 9.02 (1974)). Only "when 'some condition or environment' of the employment poses 'a special or peculiar risk' from 'the disastrous forces of nature' [is] the injury 'compensable as a risk of the employment.'" O'Donoghue, 70 Va. App. at 104-05 (quoting Hale, 43 Va. App. at 385).

Claimant contends that the Commission erred by ruling that her accident resulted solely from an act of God. She argues that the "condition[] of the gate posed a special and peculiar risk when the weather was windy and ultimately led to [her] injuries." Claimant stresses that "the big metal gate [wa]s not only heavy, but appear[ed] to lack any means of [being] locked in the open position," thereby "allowing [it] to swing shut with great force." Further, she notes that "[t]he gate, as well as the two sections . . . next to it, ha[d] a steel slab connected to it." Claimant asserts that the presence of the steel slab increased the weight of the gate and rendered it more susceptible to windy conditions in the breezeway. Thus, she contends that she proved by a preponderance of the evidence that "the combination of the wind and a condition of [her] employment collaborated to cause her injuries."

In the alternative, claimant argues that, even if she failed to prove that the conditions of her employment collaborated with an act of God to cause her accident, the Commission erred applying the act of God defense to her claim. She asserts that "[t]he 'act of God' defense is contrary to the humanitarian purposes of the . . . Workers' Compensation Act." Without expressly stating as much, claimant appears to urge us to overrule the cases providing for such a defense.

Finally, assuming that we decline her invitation to eliminate the act of God defense, claimant contends that the Commission erred by applying it to the facts of her case. She maintains that the act of God defense is limited to cases involving "lightning, floods, cyclones, hurricane winds, and tornados" and does not apply when weather conditions are simply "very windy." Citing Ellerson Floral Co. v. Chesapeake & O. Ry. Co., 149 Va. 809, 811 (1928), claimant asserts that the doctrine governs only "unusual and extraordinary manifestation of the forces of nature that . . . could not under normal conditions have been anticipated or expected." We disagree.

- 7 -

First, we cannot overrule the precedent establishing the act of God defense. The defense is rooted in the actual risk test adopted by the Supreme Court. See Lucas, 41 Va. App. at 133-34 (citing Lucas, 212 Va. at 563). Even if we were inclined to overrule the act of God defense in Lucas and the Supreme Court precedent on which it rests, which we are not, we lack the authority to do so. Under the interpanel accord doctrine, "a decision from a panel of this Court 'cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court.'" Sandoval v. Commonwealth, 64 Va. App. 398, 419 (2015) (quoting Reed, 40 Va. App. at 73). Similarly, we do not have the authority to overrule decisions by the Supreme Court. Vay v. Commonwealth, 67 Va. App. 236, 258 n.6 (2017).

Further, we conclude that the Commission did not err by deciding that the "act of God" doctrine applied to the windy conditions which caused claimant's fall. "In Virginia, under the actual risk test, proof of an injury while at work from . . . some '*natural force*,' standing alone, is considered 'an act of God'" for which there is no "coverage under the Act." Conner, 70 Va. App. at 203 (emphasis added) (quoting O'Donoghue, 70 Va. App. at 104). Appellant concedes that wind is a force of nature, and we have held that an "act of God" encompasses "forces of nature."

> If an employee is injured by *some natural force*, . . . the event does not in and of itself fasten liability on the employer. The theory is that death or any incapacity to work resulting from some natural force operating directly upon the victim without the intervention of any other agency or instrumentality, arises not of the employment but is due solely to an act of God.

Lucas, 41 Va. App. at 134-35 (emphasis added) (quoting Blair, supra, § 9.02); see also Cooper v. Horn, 248 Va. 417, 425 (1994) (To constitute an "act of God," "all human agency [must] be excluded from creating or entering into the cause of [the] mischief . . . ." (quoting City of Portsmouth v. Culpepper, 192 Va. 362, 367 (1951))); David v. Hampton Roads Transit Transp. Dist. Comm'n, JCN No. VA00000899840 (Va. Workers' Comp. Comm. May 26, 2015)

(recognizing "gust of wind" as "act of God"); Bramlett v. Stop In Food Stores/Petroleum Marketers, Inc., VWC File No. 239-20-55 (Va. Workers' Comp. Comm. Mar. 31, 2009) (characterizing gust of wind "on a windy day" as act of God); Cantwell v. Bldg. Serv. Contractors Ass'n Internat'l, VWC File No. 180-62-22 (Va. Workers' Comp. Comm. Aug. 25, 1997) ("strong gust of wind" was a "natural force" or "act of God" that was partially responsible for employee's accident). Accordingly, the Commission did not err by ruling that the act of God doctrine applied to the gust of wind that caused claimant's accident.

Finally, we conclude that the Commission did not err by ruling that claimant failed to prove by a preponderance of the evidence that her accident arose out of her employment. To meet her burden of proof, claimant had to prove that "some condition" of her employment, or the "environment therein," exposed her to "a special or peculiar risk" of the forces of nature. Lucas, 41 Va. App. at 135. "The applicable test [is] not whether the injury was caused by an act of God, but whether the employment collaborated in causing the injury or death." Id. (quoting Blair, supra, § 9.02). It is significant to note that both the deputy commissioner and the full Commission actually viewed a video of the incident which gave rise to the claim. Although claimant argues that the solid panel on the door "collaborated" with the wind to cause her accident, the Commission found that the door was "covered partially in chain link" that "provide[d] less air resistance than a solid door." It also determined that nothing in the video corroborated claimant's contention that the physical characteristics of the site of her accident rendered it "particularly windy." This Court is bound by those factual findings regarding the video's content.[5] See Wilson v. Commonwealth, 29 Va. App. 236, 240 (1999) ("The fact finder

---

[5] Although claimant asserts that the absence of a locking mechanism on the gate securing it in an open position made it more susceptible to movement during windy conditions, she testified that the gate was not defective. We are bound by the Commission's finding that the gate was neither defective nor constructed in a manner that made it particularly susceptible to the force of wind. See Lucas, 41 Va. App. at 136.

may take into consideration and regard as evidence details of [a] photograph about which no testimony has been offered."). An "appellate court does not 'retry the facts,' reweigh the evidence, or make its own determination of the 'credibility of the witnesses.'" Yahner, 70 Va. App. at 273 (quoting Jeffreys, 297 Va. at 87). That deference applies even to factual findings regarding recordings, sometimes referred to as a "silent witness." See Donati v. Commonwealth, 37 Va. App. 575, 581 (2002). As we have recognized, "[p]hotographs are 'an aid . . . in ascertaining the truth.'" Bowman Apple Products Co., Inc. v. Commonwealth, State Water Control Bd., 50 Va. App. 383, 392 (2007) (quoting Adams v. Ristine, 138 Va. 273, 298 (1924)). "The video recording . . . merely provided depictions of physical facts that presented a . . . question [for the fact finder]." Donati, 37 Va. App. at 581. Further, although claimant asserts that the absence of a mechanism on the gate securing it in an open position made it more susceptible to movement in windy conditions, she testified that the gate was not defective.

We also note that, while claimant's job required her presence on campus, nothing in the record indicates that employer directed her to pass through the gate where she was injured. See Conner, 70 Va. App. at 204 (officer's injury from slipping on grass during adverse weather conditions did not arise out of her employment when she chose to interview suspect outdoors rather than in police vehicle); cf. Kjellstrom & Lee, Inc. v. Saunders, 42 Va. App. 673, 680 (2004) (traffic flagger's heat-related stroke and heart attack arose out of employment where employer required him to work in heat without access to water or work breaks); Imperial Trash Service v. Dotson, 18 Va. App. 600, 604-05 (1994) (employee's conditions of employment were "primary cause of [his] heatstroke" where "his employment required him to do significant work and exertion over a relatively short period of time in hot, humid conditions"); David, JCN VA00000899840, at *4 ("[C]laimant's employment required her to wait in . . . van [where she was injured] during periods of layover."). The gate's presence at claimant's workplace, "in [the]

absence of other factors, did not create a causal relationship between [claimant's] fall and the conditions of [her] employment." Snyder, 62 Va. App. at 414. Thus, claimant failed to prove that "the causative danger" "had its origin in a risk connected with [her] employment[] and [that it] flowed from that source as a rational consequence." Id. at 413 (quoting Simms, 281 Va. at 123).[6]

"If . . . a claimant cannot establish a causal relationship between a purported work hazard and h[er] injury, the claimant cannot recover under the Workers' Compensation Act." Herndon, 59 Va. App. at 559. Applying the actual risk test to the facts of this case, we hold that the Commission did not err by ruling that claimant failed to prove by a preponderance of the evidence that her injuries arose out of her employment. The fact that claimant's job generally required her to patrol the school campus did not create a causal relationship between a special risk of her employment and her injury. Claimant presented no evidence that her employer required her to walk through the gate where she was injured or that she was carrying a work-related item in one of her hands. Although she described the weather as "very windy," she presented no evidence that the weather conditions collaborated with a condition of her employment or workplace to expose her to a special risk of injury. Based on the facts in the record, the risk of claimant being injured by the gate in windy conditions was equal to that of any member of the general public or student population passing through it. See Hercules, Inc. v. Stump, 2 Va. App. 77, 79 (1986) ("Risks to which all persons similarly situated are equally exposed and not traceable to some special degree to the particular employment" are not

---

[6] The Commission did not expressly address whether the location of the accident was accessible to the general public or restricted to employees. However, the record reasonably supports the inference that it was open to visitors to the school and to students. The gate did not require a key to open in the direction that claimant traveled, and the breezeway where she fell was the site of deliveries and trash receptacles.

compensable. (quoting <u>Dreyfus & Co. v. Meade</u>, 142 Va. 567, 570 (1925))). Accordingly, claimant's injuries are not compensable.

Conclusion

For the above-stated reasons, we hold that the Commission did not err by holding that claimant's injuries did not arise out of a risk of her employment. Accordingly, we affirm the Commission's decision.

<u>Affirmed.</u>